IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ANTHONY GAY,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. **08-059-DRH** |
| | ) |
| **KRISTIN KWASNIEWSKI HAMMERSLY,** | ) |
| | ) |
| Defendant. | ) |

## **REPORT and RECOMMENDATION**

This Report and Recommendation is respectfully submitted to Chief Judge David R. Herndon pursuant to 28 U.S.C. §§636(b)(1)(B) and (C).

The parties have filed cross-motions for summary judgment. Before the court are plaintiff's Motion for Summary Judgment **(Doc. 31)** and defendant's Motion for Summary Judgment **(Doc. 36)**.

Plaintiff's motion **(Doc. 31)** was filed on August 14, 2008. Within the time for filing a response, defendant filed her own motion for summary judgment at **Doc. 36,** which is responsive to plaintiff's motion. Plaintiff was granted an extension of time, up to January 30, 2009, in which to respond to defendant's motion. **See, Doc. 45.** However, plaintiff has not filed a response.

Plaintiff Anthony Gay is an inmate in the custody of the IDOC. He filed suit under 42 U.S.C. §1983 for violation of his Eighth Amendment rights. He originally filed suit in state court, and the case was removed. On preliminary review, the court dismissed plaintiff's state law claims, and dismissed all claims as to defendant Grace Hart. The only claim now remaining

1

is against defendant Hammersley for deliberate indifference to his serious medical needs. That claim has been construed as follows:

> Plaintiff states that since his arrival at Tamms in January 2004, he has self-mutilated on more than 100 occasions, and that Defendant Kristin Hammersley is well-aware of his propensity for selfmutilation. On February 21, 2007, Plaintiff inflicted a three-inch wound on his left leg. He was placed on suicide watch, during which he inflicted a six-inch cut on his right arm. Hammersley documented these injuries, and she discontinued the suicide watch on February 22. On February 23, 2007, at approximately 9:30 AM, Plaintiff advised Hammersley that he wanted to be placed on suicide watch. Hammersley said "Why?" and then walked away. About 20 minutes later, Plaintiff inflicted a four-inch cut on his right forearm. Plaintiff alleges that in releasing him from suicide watch, and then later refusing to reinstate that watch, Hammersley was deliberately indifferent to his serious medical needs, in violation of his rights under the Eighth Amendment.

**See, Doc. 28, p. 2**.

## Standard for Summary Judgment

Summary judgment is appropriate under **Fed.R.Civ.P. 56** where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).** The evidence is construed in the light most favorable to the non-moving party and all justifiable inferences are drawn in favor of that party. **See, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14 (1986).** Once the moving party has produced evidence to show that he or she is entitled to summary judgment, the non-moving party must affirmatively demonstrate that a genuine issue of material fact remains for trial. ***Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).**

In responding to a summary judgment motion, the non-moving party may not simply reiterate the allegations contained in the pleadings; more substantial evidence must be presented

at this stage. Moreover, a genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson*, **477 U.S. at 247**, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, **475 U.S. 574, 586 (1986)**. Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, **477 U.S. at 252, 106 S.Ct. at 2512.**

Summary judgment is not barred by the mere existence of some factual dispute. *Anderson*, **477 U.S. at 248; see also,** *JPM Inc. v. John Deere Industrial Equipment Company*, **94 F.3d 270, 273 (7th Cir. 1996)**. Only disputes as to facts that might affect the outcome of the suit in light of the substantive law are sufficient to defeat summary judgment. Disputes as to irrelevant or unnecessary facts do not preclude summary judgment. *Clifton v. Schafer*, **969 F.2d 278, 281 (7th Cir. 1992).**

Plaintiff is a *pro se* inmate, and his pleadings must be liberally construed. *Duncan v. Duckworth*, **644 F.2d 653, 655 (7th Cir.1981).**

## Applicable Law

The Eighth Amendment prohibits "deliberate indifference to serious medical needs." *Estelle v. Gamble*, **429 U.S. 97, 104, 97 S. Ct. 285, 291 (1976).** A medical condition is serious if failing to treat it could lead to further significant injury or unnecessary and wanton infliction of pain. *Gutierrez v. Peters*, **111 F.3d 1364, 1373 (7th Cir. 1997)**.

It is well settled that negligence or medical malpractice will not create liability under **42 U.S.C. § 1983**. **See,** *Estelle*, **97 S. Ct. at 292;** *Wood v. Woracheck*, **618 F.2d 1225 (7th Cir. 1980)**. Likewise, the provision of a course of treatment other than that preferred by the inmate

3

will not create liability.  *Estelle*, 97 S. Ct. at 293; *Burns v. Head Jailor*, 576 F. Supp. 618 (N.D. Ill. 1984).  An inmate has no right to a particular course of treatment of his choosing. *Meriweather v. Faulkner*, 821 F.2d 408, 413 (7th Cir. 1987).

In order to prevail on his constitutional claim, plaintiff must satisfy the two-part test enunciated in *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994).  The test has two prongs, that is, an objective and a subjective component.  Thus, plaintiff must show (1) his condition was objectively serious, and (2) the defendant acted with deliberate indifference, which is a subjective standard.  *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).  The subjective prong of the *Farmer* test requires that plaintiff show that defendant acted with a sufficiently culpable state of mind, "something akin to criminal recklessness."  *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006).  Negligence or medical malpractice does not meet this standard. *Id.*, at 396; *Estelle*, 97 S. Ct. at 292; *Wood v. Woracheck*, 618 F.2d 1225 (7th Cir. 1980).

### **Plaintiff's Motion for Summary Judgment (Doc. 31)**

Plaintiff argues that he is entitled to summary judgment because the undisputed facts establish that Hammersley was deliberately indifferent when she discontinued his suicide watch on February 22, 2007, and again when she failed to put him back on suicide watch on February 23, 2007, at approximately 9:30 a.m.

Plaintiff relies on defendant's responses to his requests for admissions to establish the facts.  The responses are attached to plaintiff's memorandum in support, **Doc. 32.**  According to plaintiff, since defendant admits that she did not put him back on suicide watch when he informed her that he would harm himself, he is entitled to judgment.  He is incorrect.

Even in the absence of a dispute as to the material facts, the moving party must

4

demonstrate that it is entitled to judgment as a matter of law. "Thus, even where many or all of the material facts are undisputed, the court still must ascertain that judgment is proper 'as a matter of governing law.' [internal citations omitted]" **Johnson v. Gudmundsson, 35 F.3d 1104, 1112 (7th Cir. 1994).**

Plaintiff's argument ignores the full text of defendant's responses to his requests for admissions. In response to requests numbers 5 and 6, defendant explains that plaintiff chooses to use self-harming behavior as a means to manipulate others. She states that his self-harming behavior is calculated and that he purposely harms himself in order to achieve a particular goal. She agrees that he uses poor judgment, but also states that his "actions are not the result of impulsive behavior or the result of a condition that could be controlled with medication."

Defendant explains why she discontinued the suicide watch on February 22, 2007, in her response to request number 8. She explains that she discontinued the suicide watch because "As clearly noted in the medical chart, Mr. Gay was not suicidal and his self-harming behavior was calculated. Crisis watches were counter-therapeutic."

Defendant explains why she refused plaintiff's request to return him to suicide watch (also referred to as crisis watch) at approximately 9:30 a.m. on February 23, 2007 in her responses to requests numbers 9 through 14. She admits that she noted in his medical record at that time that he was threatening to engage in self-harm, but also states that "He threatened to cut in an attempt to get a housing change." In her responses to requests numbers 13 and 14, she states that crisis watch is counter-therapeutic for plaintiff because he "engages in calculated self-harm to address non-mental health issues" and that he cut himself "in an attempt to get a housing change and attention." She goes on to state that placing plaintiff on crisis watch does not

5

guarantee that he will not cut himself, and that "giving Mr. Gay what he requests seems to encourage more cutting."

The materials filed by plaintiff in support of his motion demonstrate that he is not entitled to judgment as a matter of law. This conclusion is further supported by the materials filed in support of defendant's motion, discussed in detail below.

Plaintiff's motion **(Doc. 31)** should be denied.

### Defendant's Motion for Summary Judgment (Doc. 36)

Defendant argues that she is entitled to summary judgment because the record establishes that she was not deliberately indifferent to Gay's serious medical needs.

A partial transcript of plaintiff's deposition is attached to the motion. Plaintiff testified that he did not engage in cutting behavior before he came to prison. His original prison sentence was seven years. However, because of numerous assaults on prison staff, he has amassed additional sentences totaling, according to his testimony, a hundred years.[1] Plaintiff relates these numerous staff assaults to his desire to be around Kelly Rhodes, the supervisor of clinical psychologists. According to plaintiff, he was once housed with a cellmate who cut himself. Upon observing that Rhodes treated this other inmate with care and compassion, plaintiff decided to start cutting himself so that he could have someone show him the same care and compassion. Thereafter, he became infatuated with Rhodes and would cut himself to get her attention. He further testified that he committed the numerous staff assaults so that he would be transferred to Tamms and he could see Kelly Rhodes. Deposition Transcript, pp. 20-22.

---

[1] According the to the IDOC's website, www.idoc.state.il.us, accessed on February 3, 2009, plaintiff's projected parole date is in the year 2093.

At the time of the events complained of, according to plaintiff, he was "at the point where I got to get past it [his feelings for Rhodes] because otherwise it's going to keep me down. Every time I wrote I said something about her [Kelly Rhodes] and trying to talk to somebody about it and it's, like, they wouldn't talk." Deposition Transcript, p. 22.

Plaintiff testified that, on February 22, 2007, around 9:30 a. m., defendant took him off of suicide watch. He was returned to his housing unit and his property was returned to him. He was not, at that time, complaining about being returned to the housing unit. In fact, he had been asking to be returned to the housing unit. On the next morning, February 23, 2007, he told a lieutenant that he was thinking about hurting himself and that he needed to see mental health. Defendant Hammersley responded. He told defendant that he was going to cut himself and that he wanted to go on crisis watch. Plaintiff acknowledged that the decision whether to put him on watch was generally made based on the mental health professional's assessment and his feedback. When Hammersley came to his cell, he was not actively cutting on himself, but was "unreceptive" to what she had to say. About fifteen or twenty minutes after she left, he began cutting himself. Deposition Transcript, pp. 14 - 19.

Plaintiff explained that, in the past, when he would get mad, he would assault other people. After he figured out that such behavior turned people against him, he began hurting himself when he got angry. That is how he releases his frustrations. Deposition Transcript, p. 19. He was upset on this particular day because he wanted to talk about his feelings for Kelly Rhodes, but no one would address it. Deposition Transcript, pp. 21-22.

Defendants' affidavit is attached to the motion as Exhibit A. She states that she is a licensed clinical social worker. She states that plaintiff is not mentally ill, but he does have two

personality disorders, i.e., antisocial personality disorder and narcissistic personality disorder. The medical records also indicate an Axis I diagnosis of sexual sadism. Defendant notes that plaintiff has a long history of superficial self-injurious behavior, which he uses to manipulate or negotiate a benefit for himself.

In paragraph 45, defendant explains that "suicide watch" and "close supervision" are levels of supervision for crisis care placement. A patient on close supervision receives some privileges that a patient on suicide watch does not receive.

The affidavit includes a summary of the medical records, which are also attached. Plaintiff was ordered onto suicide watch by Dr. Rhodes, a clinical psychologist, on February 21, 2007, at 4:30 a.m. Ex. A, ¶15. This order was entered after plaintiff inflicted a 3 inch cut on his leg. Dr. Rhodes wrote a note at 1:35 p.m. on February 21, 2007, which stated that the suicide watch should be continued in a housing unit to "prevent further escalation and disruption of infirmary patients. He is not seriously mental [sic] ill and constant attention reenforces acting out behavior. He may be motivated to act out to force the use of restraints to force nursing and security staff to attend to him." Ex. A, ¶22. Accordingly, plaintiff was returned to a cell in the B-pod, but was continued on suicide watch.

Thereafter, he was seen by various health care providers. At 2:00 p.m., a registered nurse noted that he had scraped the skin off of an old scar, and stated that he wanted to go into restraints. Ex. A, ¶25. At 2:05 p.m., defendant evaluated him and wrote that he "was self-assured and demanding" and was "bragging about which nurse would have to stay over when he was in restraints." She noted that his behavior was manipulative and that he was not in need of evaluation for restraints. Ex. A, ¶26.

Dr. Chandra, a psychiatrist, evaluated him at February 21, 2007, at 6:00 p.m. No acute distress or complications were noted. A foam mattress was ordered. Ex. A, ¶29. Nurses' notes at 9:00 p.m. on February 21, 2007, and at 4:00 a.m. on February 22, 2007, documented no signs of distress or self-harm behavior. Ex. A, ¶30 & 31.

On February 22, 2007, at 9:35 a.m., defendant evaluated plaintiff. Plaintiff stated that he was ready to return to his cell. He denied any desire to die or intent to harm himself. Defendant observed that plaintiff was calm, cooperative, appropriate, alert and oriented. He was not agitated, anxious, depressed, psychotic or delusional. Defendant decided to terminate the suicide watch because "there is not clinical need to continue." Defendant noted that plaintiff's self-harm behavior "was calculated and manipulative." Ex. A, ¶32.

Defendant next saw plaintiff on the following day, February 23, 2007, at 9:30 a.m. Plaintiff was in the law library at the time. He was complaining that a mental health "multipurpose room appointment" had not been scheduled for him, which he had requested on the prior day. Defendant noted that plaintiff had been instructed to submit a request for a multipurposeroom appointment, which would be scheduled if appropriate. Instead, he had sent a letter about "his love and obsession for Dr. Rhodes." Defendant stated that "This once again shows that Mr. Gay is not ready or willing to identify and/or work on issues in therapy." He then seemed to lose interest in the issue, and began to complain about his housing. He threatened to harm himself if his housing assignment was not moved. Defendant's note states "It is counter-therapeutic to address his non-mental health complaints with crisis care placement. Any acting out behavior will be addressed at that time." Ex. A, ¶34.

The next interaction between plaintiff and defendant occurred about twenty minutes later.

9

Defendant's note states that Mr. Gay told her that he cut himself because he did not want to live on B-6, and he thought that staff were retaliating against him by putting him back there. She noted that his right arm was bleeding, and that his "demeanor was demanding and he was unreceptive to intervention. He did not appear to be anxious or depressed. He was not psychotic or delusional." The medical records indicate that he had reopened a scarred area on his arm. He was placed on suicide watch. He was moved to close supervision by Rocky Peppers, a licensed clinical social worker, on February 25, 2007, at 8:15 a.m. Exhibit A, ¶¶ 44-45. Close supervision was terminated on February 26, 2007, at 9:15 a.m. Rocky Peppers noted that "Mr. Gay's recent self-harm was not due to a mental illness, but rather for secondary gain." Exhibit A, ¶¶ 48-49.

Plaintiff's complaint about defendant Hammersley is that she removed him from suicide watch on February 22, 2007, and refused his request to place him back on watch the next day.

Whether to place an inmate on suicide precautions, and the appropriate level of precautions, are treatment issues which require the exercise of professional judgment. See, ***Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-262 (7th Cir. 1996).**

The medical records and defendant's affidavit establish that Hammersley exercised her professional judgment in deciding to terminate suicide watch and in declining to reinstate crisis watch the next day. Thus, she was not deliberately indifferent to plaintiff's serious medical needs. ***Estate of Cole*, 94 F.3d at 261-262.**

This is not a case where the inmate's complaints were ignored. The record establishes that defendant evaluated plaintiff at different times and concluded that crisis watch was not therapeutic for him as it reenforced his negative behaviors. Other members of the mental health

team, Dr. Kelly Rhodes and licensed clinical social worker Rocky Peppers, reached similar conclusions.

"To infer deliberate indifference on the basis of a [defendant's] treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." **Norfleet v. Webster, 439 F.3d 392, 396 (7th Cir. 2006)**. Here, there is no such inference. First, other mental health professionals reached the same conclusion as defendant did. Secondly, the record establishes that plaintiff did not, in fact, do serious harm to himself after Hammersley discontinued the suicide watch on February 22, 2007. He demanded to be returned to crisis watch on the morning of February 23, 2007, but did not do serious harm to himself when that demand was initially refused. Thus, the record supports the inference that the decision to remove him from suicide watch was not "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." **Norfleet, supra**.

Plaintiff may quarrel with the correctness of defendant's treatment decisions, but such a quarrel does not implicate the Eighth Amendment. The Eighth Amendment does not protect prison inmates from negligence or medical malpractice. The Constitution does not guarantee that an inmate will receive the best treatment available, or that he will receive the treatment of his choosing. **Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997).** An inmate does not have a right to a particular course of treatment. **Meriweather v. Faulkner, 821 F.2d 408, 413 (7th Cir. 1987).** Simply put, plaintiff does not have a constitutionally protected right to be placed on crisis watch at any time he chooses.

**Recommendation**

This court recommends that plaintiff's Motion for Summary Judgment **(Doc. 31)** be **DENIED**, and that Defendant's Motion for Summary Judgment **(Doc. 36)** be **GRANTED**.

If this Report and Recommendation is accepted in its entirety, no claims will remain pending.

**Objections to this Report and Recommendation must be filed on or before February 23, 2009.**

**Submitted: February 4, 2009.**

>
> s/ Clifford J. Proud
> **CLIFFORD J. PROUD**
> **UNITED STATES MAGISTRATE JUDGE**