# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANTHONY GAY, B62251,

Plaintiff,

v.

KRISTIN KWASNIEWSKI
HAMMERSLEY,   No. 08-59-DRH

Defendant.

## MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

### I. Introduction

Now before the Court is the Report and Recommendation ("R&R") (Doc. 47) issued pursuant to 28 U.S.C. § 636(b)(1)(B) by Magistrate Judge Proud, recommending that Plaintiff's Motion for Summary Judgment (Doc. 31) be denied and recommending that Defendant's Motion for Summary Judgment (Doc. 36) be granted.

Plaintiff Anthony Gay, an inmate in the custody of IDOC, brings this *pro se* complaint pursuant to 42 U.S.C. § 1983 against Kristin Kwasniewski Hammersley, claiming that she was deliberately indifferent to his serious medical needs. Plaintiff originally filed his suit in state court and the case was removed. On preliminary review, the Court dismissed Plaintiff's state law claims, and dismissed all claims as to Defendant Grace Hart (Doc. 28). The only claim remaining is his

claim for deliberate indifference to his serious medical needs against Defendant Hammersley.

Pursuant to 28 U.S.C. § 636(b)(1)(B), Magistrate Judge Proud submitted a R&R on February 4, 2009 (Doc. 47). The R&R addresses 1) Plaintiff's motion for summary judgment (Doc. 31), which Judge Proud recommends should be denied; and 2) Defendant's motion for summary judgment (Doc. 36), which Judge Proud recommends should be granted. The R&R was sent to the Parties, with a notice informing them of their right to appeal by way of filing "objections" within the ten days of service of the R&R.[1] In accordance with the notice, Plaintiff has filed his Objections (Doc 57). Because timely objections have been filed, this Court must undertake *de novo* review of the objections-to portions of the R&R. **28 U.S.C. § 636(b)(1)(B); FED. R. CIV. P. 72(b); SOUTHERN DISTRICT OF ILLINOIS LOCAL RULE 73.1(b); *Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992).** The Court may "accept, reject, or modify the recommended decision." ***Willis v. Caterpillar Inc.*, 199 F.3d 902, 904 (7th Cir. 1999).** In making this determination, the Court must look at all the evidence contained in the record and give fresh consideration to those issues for which specific objection has been made. *Id*. However, the Court need not conduct a *de novo* review of the findings of the R&R for which no objections have been made. ***Thomas v. Arn*, 474 U.S. 140, 149-52 (1985).** Instead, the Court can simply adopt these findings.

---

[1] The Court notes that Judge Proud gave the parties until February 23, 2009 in which to file objections.

## II. Facts

Plaintiff brings this claim pursuant to 42 U.S.C. § 1983 against Defendant for deliberate indifference to his serious medical needs. Plaintiff is an inmate at the Tamms Supermax Correctional Center. According to a partial transcript of Plaintiff's deposition, Plaintiff testified he did not engage in "cutting" before he came to prison. His original sentence was seven years, but because of numerous staff assaults he has amassed additional sentencing totals. Plaintiff was initially housed with an inmate who cut himself and after Plaintiff saw how Kelly Rhodes, the supervisor of clinical psychologists, showed the inmate care and compassion, Plaintiff started cutting himself in order to receive the same care and compassion. (Doc. 36, Depo. Transcript, pp. 20-21). Plaintiff stated that he became infatuated with Rhodes and would cut himself to get her attention.[2] (*Id.* at 22:2-9). Plaintiff testified that at the time of the incident complained about, he had gotten past his feelings for Rhodes. (*Id.* at 22:19-25).

The allegations in Plaintiff's complaint center around the events of February 22 -23. On February 21, Plaintiff inflicted a wound on his left leg and, as a result, was placed on suicide watch. (Doc. 32, p. 1 and Doc. 36, p. 1). Medical records indicate that Plaintiff was ordered onto suicide watch by Rhodes on February 21, 2007, at 4:30 a.m. after Plaintiff inflicted a 3 inch cut on his leg. (Doc. 36, Ex. A -7). Rhodes noted at 1:35 p.m. on February 21, 2007, that Plaintiff was not

---

[2] Plaintiff states that he assaulted staff in order to get to Rhodes, which led to additional sentencing totals.

seriously mental ill and constant attention reinforces his behavior.  (*Id.* at A-13).

On February 22, at approximately 9:35 a.m., Plaintiff stated that he was ready to return to his cell and Defendant took him off of suicide watch.  (Doc. 36, Depo. Transcript, pp. 14:13 - 15:15; Doc. 36, Ex. A-20, Ex. A-21).  Plaintiff did not complain about being taken off suicide watch and, in fact, asked to be returned to the housing unit.  (*Id.*).  Defendant noted in Plaintiff's medical records that he was calm, cooperative, appropriate, alert and oriented.  She further noted that he was not agitated, anxious, depressed, psychotic or delusional.  Defendant found that there was no need to continue the suicide watch and noted that his self-harming was calculative and manipulative, used to address non-medical issues when he is mad at staff.  (Doc. 36, Ex. A-20-21).  He was returned to the housing unit and his property was returned to him.  (Doc. 36, Depo. Transcript, p. 15:1-15).

The next morning, February 23, 2007, Plaintiff told a lieutenant that he was thinking about hurting himself and that he wanted to see mental health.  (Doc. 36, Depo. Transcript, p. 15:19-23).  Defendant Hammersley responded.  Plaintiff told Defendant that he was going to cut himself and wanted to go on suicide watch. (Doc. 36, Depo. Transcript, p. 16; Doc. 36, Ex. A-23).  Plaintiff admits that the decision whether to put him on watch or in restraints was generally made on the assessment of the mental health professional and his feedback.  (Doc. 36, Depo. Transcript, p. 17:5 -18:4).  When Defendant met with Plaintiff at his cell, he was not actively cutting but was unreceptive to Defendant.  (Doc. 36, Depo. Transcript, p. 18; Doc. 36, Ex. A-23-24).  Defendant noted in Plaintiff's medical records that Plaintiff

was focused on talking with someone about his feelings for Rhodes and complained about not having a mental health "multipurpose room appointment" scheduled for him. (Doc. 36, Ex. A-23-24). Defendant noted that Plaintiff had been instructed to submit a letter regarding his request for a mental health "multipurpose room appointment", but he had instead sent a letter professing his "love and obsession" with Dr. Rhodes. (*Id.*). Defendant noted that his letter demonstrated that Plaintiff was "not ready or willing to identify and/or work on issues in therapy." (*Id*.). Defendant also noted that Plaintiff lost interest in the issue and began complaining about housing, threatening to harm himself if he was not moved. (*Id*.). Medical records indicate that Defendant found it "counter-therapeutic to address his non-mental health complaints with crisis care placement. Any acting out behavior will be addressed at that time." (*Id*. at A-26).

About fifteen to twenty minutes after Defendant left Plaintiff's cell, Plaintiff began cutting on himself. (Doc. 36, Depo. Transcript, p. 19). Plaintiff stated he was upset because he wanted to talk about his feelings for Rhodes but no one would talk to him about it. (*Id.* at pp. 20-22). Medical records indicate that Plaintiff had cut himself because he didn't want to live on B-6 and he felt the staff was retaliating against him by putting him back there. (Doc. 36, Ex. A-27). Medical records indicate he reopened a scarred area on his arm. (*Id*. at A-31). Defendant noted in his medical records that Plaintiff was demanding and unreceptive to intervention, although he did not appear to be anxious or depressed, nor psychotic or delusional. (*Id*. at A-28). He was placed on suicide watch. He was moved to close

supervision by Rocky Peppers, a licensed clinical social worker, on February 25, 2007, at 8:15 a.m. . (*Id*. at 41). Close supervision was terminated on February 26, 2007, at 9:15 a.m. Rocky Peppers noted that "Mr. Gay's recent self-harm was not due to a mental illness, but rather for secondary gain." (*Id*. at 47-48).

In support of Defendant's motion for summary judgment and in response to Plaintiff's motion to summary judgment, Defendant has attached an affidavit. (See Doc. 36, Ex. A). Defendant states that she is a licensed clinical social worker employed, at the time of this incident, at the Tamms Maximum Correctional Center. (*Id*.). Defendant states that Plaintiff has a long history of self-harm which Defendant describes as calculated and manipulative; Defendant uses self-harm to address non-medical issues. (*Id*. at ¶4). Plaintiff suffers from two personality disorders, antisocial personality disorder and narcissistic personality disorder, and his medical records indicate an Axis I diagnosis of sexual sadism. (Id. at ¶6; Doc. 36, Ex. A-3).

Plaintiff's complaint alleges that Defendant Hammersley was deliberately indifferent to his serious medical needs when she removed him from suicide watch on February 22, 2007, and refused his request to place him back on watch the next day. Plaintiff filed a motion for summary judgment on August 14, 2008 (Doc. 31). Defendant also filed a motion for summary judgment, which is responsive to Plaintiff's motion (Doc. 36). Plaintiff was granted an extension of time, up to January 30, 2009, in which to respond to Defendant's motion (Doc. 45). Judge Proud filed his R&R on February 4, 2009. On February 9, 2009, Plaintiff filed a response to

Defendant's motion for summary judgment (Doc. 52) and a motion to strike Defendant's affidavit (Doc. 51). Defendant has filed responsive motions (Docs. 54 & 55).

### III. Discussion

**A.    Applicable Law**

   **1.    Summary Judgment**

Summary Judgment is appropriate under the Federal Rules of Civil Procedure when "the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **FED. R. CIV. P. 56(c);** *Celotex Corp. v. Catrett*, **477 U.S. 317, 322 (1986).** The movant bears the burden of establishing the absence of factual issues and entitlement to judgment as a matter of law. *Wollin v. Gondert*, **192 F.3d 616, 621-22 (7th Cir. 1999).** The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *Schneiker v. Forts Ins. Co.*, **200 F.3d 1055, 1057 (7th Cir. 2000);** *Baron v. City of Highland Park*, **195 F.3d 333, 337-38 (7th Cir. 1999).** In response to a motion for summary judgment, the nonmovant may not simply rest on the allegations as stated in the pleadings. Rather, the nonmovant must show through specific evidence that an issue of fact remains on matters for which the nonmovant bears the burden of proof at trial. *Walker v. Shansky*, **28 F.3d 666, 670-71 (7th Cir. 1994), aff'd,**

51 F.3d 276 (citing *Celotex*, 477 U.S. at 324).

No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or it is not sufficiently probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted); *accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). "[P]laintiff's own uncorroborated testimony is insufficient to defeat a motion for summary judgment." *Weeks v. Samsung Heavy Industries Co., Ltd.*, 126 F.3d 926, 939 (7th Cir. 1997). In other words, summary judgment may not be averted merely by the non-moving party "baldly contesting his adversary's factual allegations," but instead, the non-moving party must come forth with probative evidence to substantiate allegations of the complaint. *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997) (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

2.  **Deliberate Indifference to a Serious Medical Need**

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, imposes a duty upon states to provide adequate medical care to

incarcerated individuals.  See *id.* at 103; see also ***Walker v. Benjamin*, 293 F.3d 1030, 1036-37 (7th Cir. 2002)**.  To create a violation by failing to provide medical care, there must be "deliberate indifference" to a substantial risk of harm.  ***Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994))**.  This standard erects two high hurdles which every inmate-plaintiff must clear.  ***Dunigan v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999)**.  The plaintiff must show: 1) the medical condition was objectively serious; and 2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.  ***Sherrod*, 223 F.3d at 610.**

A condition is objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." ***Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)**.  To show deliberate indifference, a plaintiff must establish that the jail official "was subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed" to his health.  ***Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002) (citing *Wynn v. Southward*, 251 F.3d 588 (7th Cir. 2001))**.  The Seventh Circuit has said that deliberate indifference requires a showing of more than mere negligence (or even gross negligence) but less than purposeful infliction of harm.  ***Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 553, 557 (7th Cir. 2003); *Perkins*, 312 F.3d at 875.**  Furthermore, an inmate is not entitled to demand specific care, nor is he entitled to the best care available.  ***Forbes v. Edgar*,**

112 F.3d 262, 267 (7th Cir. 1997).

In other words, "the Eighth Amendment is not a vehicle for bringing claims for medical malpractice." **Snipes v. Detella**, 95 F.3d 586, 590 (7th Cir. 1996) (citing *Estelle*, 429 U.S. at 105; **Bryant v. Madigan**, 84 F.3d 246, 249 (7th Cir. 1996)). Nor is it a vehicle to determine "whether one course of treatment is preferable to another…[as] [s]uch matters are questions of tort, not constitutional law." *Id.* at 591. As the United States Supreme Court declared, "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." **Farmer v. Brennan**, 511 U.S. 825, 838 (1994).

**B.    Analysis**

    **1.    Plaintiff Gay's Motion to Strike**

On February 9, 2009, Plaintiff filed a motion to strike Defendant Hammersley's affidavit filed with her motion for summary judgment (See Doc 36, Ex. A) because, Plaintiff argues, Defendant lacked personal knowledge (Doc. 51). Plaintiff moves to strike several paragraphs from the affidavit of Defendant.

**FEDERAL RULE OF CIVIL PROCEDURE 56(e)** provides in part that affidavits in support of a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." **FED. R. CIV. P. 56(e).**

Plaintiff argues that Defendant lacks personal knowledge of the entries in Plaintiff's medical records because she was not present during Plaintiff's interactions with the medical personnel and the treatment described in those entries. Defendant argues that her affidavit does not testify to the treatment that Plaintiff received, but rather as to the contents of Plaintiff's medical records. Defendant further argues that she has firsthand relevant knowledge of Plaintiff's medical records because she was Plaintiff's medical provider and she testified as to his medical treatment received from other medical professionals to provide context to the medical treatment she provided in relation to this case. Defendant is a medical provider for Plaintiff and her affidavit, in part, reviews medical records which are admissible.[3] For purposes of summary judgment, Defendant is competent to testify as to the contents of those medical records. Therefore, Plaintiff's motion to strike Defendant's affidavit is **DENIED**.

### 2. Defendant's Motion to Strike

On March 2, 2009, Defendant Hammersley filed a motion to strike Plaintiff's objections to the Report and Recommendations (Doc. 58), arguing that the objections were untimely. Judge Proud gave the parties until February 23, 2009 in which to file objections to the R&R (Doc. 47). Although Plaintiff's objections were not filed until February 25, 2009, the objections were mailed on February 20, 2009, well

---

[3] The Court notes that the medical records were also submitted as an exhibit to Defendant's motion for summary judgment. Plaintiff does not object to the admissibility of the documents themselves, but rather only objects to Defendant's statements in her affidavit reviewing those medical records.

before the deadline established by Judge Proud. Therefore, the Court deems Plaintiff's objections to be timely filed. Defendant Hammersley's motion to strike is, therefore, **DENIED**.

### 3. Defendant Hammersley's Motion for Summary Judgment

Plaintiff objects to Judge Proud's recommendation to grant Defendant Hammersley's motion for summary judgment because, as Plaintiff argues, Judge Proud's R&R was premature as he had not received Plaintiff's response to Defendant's summary judgment motion. Defendant filed her motion for summary judgment on September 5, 2008 (Doc. 36). On January 1, 2009, Plaintiff was granted an extension of time, up to January 30, 2009, in which to respond to Defendant's motion (Doc. 45). Judge Proud noted that Plaintiff would not be granted any further extensions, absent a compelling reason (*Id*.). Judge Proud filed his R&R on February 4, 2009 (Doc. 47). Plaintiff filed his response on February 9, 2009 (Doc. 52). Plaintiff argues that his response should have been considered timely filed because it was mailed on January 28, 2009. Since Plaintiff's response is dated January 28, 2009, the Court will consider the response in ruling on Defendant's motion for summary judgment.[4]

---

[4] The Court notes that the remainder of Plaintiff's objection reiterates points in his response to Defendant's summary judgment as well as focuses on whether Plaintiff suffers from a mental illness and whether the Defendant intentionally misdiagnosed Plaintiff. He poses numerous questions as to whether a jury could infer that Defendant was mad when she refused his request or that she was deliberately indifferent. As to the questions posed by Plaintiff, the Court finds those to be general objections to Judge Proud's R&R as Plaintiff never specifically points to a finding or recommendation of Judge Proud's which he objects to, nor does he explain the basis for such objection. Therefore, as to those objections, the Court need not conduct *de novo* review. **Thomas v. Arn**, **474 U.S. 140, 149-52 (1985).**

Plaintiff's complaint alleges that Defendant Hammersley was deliberately indifferent to his serious medical needs when she removed him from suicide watch on February 22, 2007, and refused his request to place him back on watch the next day. Defendant argues that there are no issues of material fact and that she is entitled to summary judgment because she was not deliberately indifferent to any of the Plaintiff's serious mental health needs.[5] In Plaintiff's response, he does not raise any issues of material fact, but argues that Defendant was deliberately indifferent to his serious medical needs when she ignored his threats to harm himself and failed to place Plaintiff on suicide watch. Plaintiff argues that Defendant knew he had a long history of self-mutilation and that while putting him on suicide watch wouldn't have prevented him from desiring to cut himself, it would have prevented him for succeeding (Doc. 52, p. 10).

Whether to place a prisoner on suicide watch and what level of precaution to take with an inmate are issues within a professional medical judgment. **See *Estate of Cole v. Fromm*, 94 F.3d 254, 261 (noting the distinction between a "medical judgment" and deliberate mistreatment: "a medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice…").**

---

[5] Although Defendant states that whether Plaintiff's self-inflicted wound to his right arm was a serious medical need which constituted a serious risk of physical harm to Plaintiff, Defendants focuses her argument on the deliberate indifference portion of the analysis, assuming the self-inflicted wound constituted a serious medical need. Plaintiff focuses his arguments on that fact that Defendant was deliberately indifferent in ignoring Plaintiff's threats to harm himself.

Here, the record indicates that Defendant exercised her medical judgment when deciding to take Plaintiff off of suicide watch on February 22, 2007 and refusing his request to put him back on watch on the morning of February 23, 2007. **See *Estate of Cole*, 94 F.3d 254, 261.** Defendant took Plaintiff off of suicide watch on February 22, 2007 in part because Plaintiff requested that he be released from suicide watch. The record further indicates that Plaintiff had no desire or intent to harm himself and that he was calm and cooperative. Regarding the decision not to reinstate suicide watch on the morning of February 23, 2007, the record indicates that Defendant did not think placing Plaintiff on suicide watch was appropriate as it was counter-therapeutic to address his non-mental health issues with crisis care placement. The record indicates in several places that Plaintiff uses self-harm in manipulative ways when he is angry with staff; he uses self-harm as a way of getting what he wants. Plaintiff even admits that he used self-harm to get care and compassion from staff. The record further indicates that increased attention only "exacerbate[s] his access to psychopathology." From the facts, the Court finds that Defendant was exercising her medical judgment when she decided to refuse Plaintiff's request to place him back on watch the next day.

Further, deliberate indifference is only inferred when Defendant's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that she did not base her decision on professional judgment. ***Estate of Cole*, 94 F.3d 254, 261-62 (7th Cir. 1996).** The record indicates that Defendant did not place Plaintiff on suicide watch because

placing him on suicide watch would reinforce his negative behavior. Other members of the mental team, including Dr. Rhodes and licensed clinical social worker Rocky Peppers, have come to similar conclusions regarding his motive for self-harm. Further, the record indicates that Plaintiff did not do serious harm to himself when the suicide watch was discontinued on February 22, 2007 nor when Defendant first met with him on the morning of February 23. Thus, as Judge Proud pointed out, the records supports the inference that the decision to remove him from suicide watch and not to reinstate suicide watch on the morning of February 23 was not "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." **Norfleet v. Webster, 439 F.3d 392, 396 (7th Cir. 2006).**

While Plaintiff disagreed with Defendant's decision not to place him on suicide watch on the morning of February 23, that does not give rise to civil rights claim for violation of his Eighth Amendment right. **See Garvin v. Armstrong, 236 F.3d 896, 897 (7th Cir. 2001) ("[A] difference of opinion as to how a condition should be treated does not give rise to a constitutional violation.").** An inmate does not get to decide on a particular course of treatment. **Meriweather v. Faulkner, 821 F.2d 408, 413 (7th Cir. 1987).** Further, the Constitution does not guarantee that an inmate will receive the best treatment available, nor is he guaranteed the specific care of his choosing. **Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997).** As Judge Proud indicated, Plaintiff does not have the right to go on

suicide watch anytime he chooses. Plaintiff has admitted that it is the mental professional who make an assessment as to whether to place him on suicide watch or in restraints. Plaintiff further admits that Defendant has known him for several years and knows of his tendency to self-harm. Defendant has stated that she is also aware of his manipulative use of self-harm and has found that it can be counter-therapeutic to place him in crisis care as it reinforces his negative, self-harming behavior. Defendant was, therefore, not deliberately indifferent to Plaintiff's serious medical needs when she decided to remove him from suicide watch and refused his request to place him back on suicide watch the next day.

### 4. **Plaintiff Gay's Motion for Summary Judgment**

The Court notes that while Plaintiff has filed objections to Judge Proud's R&R, his objections center around Judge Proud's recommendation to grant Defendant's summary judgment. None of his objections focus on Plaintiff's own motion for summary judgment. Plaintiff does note in the last sentence of his objections that his motion for summary judgment should be granted because he argues that Defendant has failed to respond to his motion for summary judgment. However, as Judge Proud notes, Defendant's motion for summary judgment was also responsive to Plaintiff's summary judgment. **73.1(b)** provides that objections to the Report "shall specifically identify the portions of the proposed findings, recommendations, or reports to which objection is made and the basis for such objections." **SDIL-LR 73.1(b) (emphasis added).** Nowhere in Plaintiff's objections

does he point to a specific portion of Judge Proud's findings or recommendations in regards to Plaintiff's motion for summary judgment to which Plaintiff objects. Therefore, pursuant to **28 U.S.C. § 636(b)(1)**, the Court need not conduct a *de novo* review of the general objections. ***Thomas v. Arn*, 474 U.S. 140 (1985).**

Despite the fact that the Court need not conduct a *de novo* review, the Court concludes that Defendant Hammersley was not deliberately indifferent to Plaintiff's serious medical needs. Plaintiff argues that there are no issues of material fact and that Defendant's admissions in her response to request for admissions(Doc. 32, Appendix) provide the basis for granting Plaintiff's summary judgment as a matter of law. However, as Judge Proud pointed out, Defendant's admission that she did not put him back on suicide watch does not entitle Plaintiff to summary judgment. The moving party must demonstrate that it is entitled to judgment as a matter of law. "Thus, even where many or all of the material facts are undisputed, the Court still must ascertain that judgment is proper 'as a matter of governing law.'" ***Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994) (international citations omitted).**

Although Defendant admits in her response to request for admissions, that she chose not to place him on crisis watch, Defendant goes on to explain why she refused Plaintiff's request to return to suicide watch at 9:30 a.m. on February 23, 2007. Defendant stated that she refused his request because as the medical chart indicates, "Gay was not suicidal and his-harming behavior was calculated. Crisis

watches were counter-therapeutic." (Doc. 32, Appendix p. 2). She stated in her response to request numbers 13, crisis care placement does not prevent Plaintiff from engaging in self harm. Further, in her response to request number 15, she stated that "giving Mr. Gay what he requests seems to encourage more cutting." (*Id*.).

Defendant's responses to Plaintiff's request for admissions, as well as a review of the materials submitted with Defendant's motion for summary judgment, show that Plaintiff is not entitled to summary judgment as a matter of law. As previously discussed in analyzing Defendant's motion for summary judgment, Defendant was not deliberately indifferent to Plaintiff's serious medical needs.

## IV. Conclusion

Therefore, the Court **ADOPTS** Judge Proud's R&R in its entirety (Doc. 47). The Court **DENIES** Plaintiff's motion for summary judgment (Doc. 31) and **GRANTS** Defendant's motion for summary judgment (Doc. 36). The Court further **DENIES** Plaintiff's motion to strike (Doc. 51) and Defendant's motion to strike (Doc. 58).

**IT IS SO ORDERED.**

Signed this 4th day of March, 2009.

/s/ *DavidRHerndon*

**Chief Judge**
**United States District Court**